**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

      JAMES S. LIBRA,                            Case No. 16-54467-mlo
                                                Chapter 7
          Debtor.                        Hon. Maria L. Oxholm

_____/

KENNETH NATHAN, Trustee,

Plaintiff,

v.                                            Adv. Pro. No. 17-04289-mlo

NANCY LIBRA,

Defendant.

_____/

**OPINION AFTER TRIAL**

**I. INTRODUCTION**

       This matter is before the Court upon conclusion of a trial on the merits on February 23,

2018. The plaintiff Kenneth Nathan ("Trustee") filed this adversary proceeding to avoid

prepetition transfers from debtor James Libra ("Debtor") to defendant Nancy Libra

("Defendant") including certain court ordered transfers and obligations that arose as a result of a

consent judgment of divorce between the parties in the Wayne County Circuit Court.

Specifically, Trustee asserts that the transfers of Debtor's interest in the parties' marital home

and of a disputed $30,000 in cash were fraudulent under 11 U.S.C. § 548(a)(1)(B) and Mich.

Comp. Laws Ann. § 566.31 et seq, respectively. Defendant denies these allegations.

       The following constitutes the Court's findings of fact and conclusions of law pursuant to

Fed. R. Civ. P. 52, made applicable by Fed. R. Bankr. P. 7052. For the reasons set forth below,

the Court finds that the transfer of the Debtor's interest in the marital home did not constitute a fraudulent transfer within the meaning of 11 U.S.C. § 548(a)(1)(B) and therefore may not be avoided. However, the Court finds that no value was given in exchange for the monetary transfer of $21,900 and consequently Trustee met his burden under M.C.L. § 566.35(1). This transfer may be avoided subject to Trustee establishing the elements of 11 U.S.C. § 544.[1]

## II. JURISDICTION AND RELATED ISSUES

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. §157. This adversary proceeding seeks to avoid prepetition transfers as fraudulent and therefore is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(H).

On December 1, 2017, Trustee filed a motion for summary judgment seeking to avoid the above referenced transfers. On February 1, 2018, the Court held a hearing on Trustee's motion and denied Trustee's requested relief finding that, based on the facts of this case and the evidence presented at that time, the determination of reasonably equivalent value was inappropriate for disposition under Fed. R. Civ. P. 56. Neither party presented any argument or authority, then or now for purposes of trial, regarding the parties' interests in the property at the time of the relevant transfer and the mutual obligations of spouses pursuant to Michigan law. As will be discussed, the parties' legal rights change upon the filing of a divorce action; as a result, the Court reconsiders its prior finding that the issue of "reasonably equivalent value" as to the pre-divorce monetary transfer was an issue of fact and proceeds with the following factual and legal analysis.

The parties have submitted a Stipulation of Facts and Admissibility of Exhibits for Trial, wherein the parties stipulated to the authenticity and admission of all exhibits listed in the Final

---

[1] The Court notes that Trustee did not plead 11 U.S.C. § 544 in his complaint. Nor were there arguments or stipulations regarding § 544. While the proofs will not be reopened, the Court will permit supplemental briefing on this critical issue.

2

Pre-Trial Order as well as the establishment of certain prima facie elements of both claims.[2] (ECF No. 61). With regard to the fraudulent transfer claim under § 548, the parties stipulate that Trustee established (1) the transfer was made while Debtor was insolvent or rendered insolvent as a result of the transfer; and (2) the transfer was made within two years of Debtor's bankruptcy. For the fraudulent transfer claim under M.C.L. § 566.35(1), the parties stipulate that Trustee established (1) there was a Creditor whose claim arose before the transfer was made; (2) the transfer was made while Debtor was insolvent or rendered insolvent as a result of the transfer; and (3) the transfer was made within six years of Debtor's Bankruptcy petition. Accordingly, the only issue before the Court is whether Debtor received reasonably equivalent value for the transfers.

## III. ANALYSIS

### a. <u>Findings of Fact</u>

The facts of this case are largely undisputed. Defendant, 54, and Debtor, 56, were married for almost 28 years. They have three children together, ages 36, 34 and 30. During the marriage, Debtor was the primary breadwinner. Defendant took care of the home and raised their three children. Defendant occasionally worked part time when the children went to college. Her income ranged from $6,000-$8,000 per year with a maximum of $10,000.

Debtor worked at a local furniture store, Moss & Associates, Inc. ("M&A") for several decades before purchasing the business. Soon after taking over the business, it began experiencing financial losses. Debtor's average income in the beginning of his employment with M&A was around $700 per week, it peaked at $2,400 per week, and went down to about $1,000

---

[2] This stipulation includes Debtor's deposition transcript, which the Court heavily relied on in this opinion. Debtor was not properly served and was unable to appear as he was out of state at the time of the scheduled trial. The only witness called to testify was Defendant. The parties were given an opportunity to adjourn the trial to procure Debtor's presence, but both parties agreed to proceed as scheduled with the admission of Debtor's deposition transcript.

3

per week over the last few years before the business closed. The parties' joint tax returns show Debtor's income in 2012 at $69,606; 2013 at $60,409; and 2014 at $4,431. In 2016 his income was $65,000 and about $70,000 in 2017.[3]

Debtor maintained a retirement account through Edward Jones as a benefit of his employment with M&A.[4] The retirement account was in his name only, Defendant was a named beneficiary. Debtor funded the account solely through earned bonuses. The retirement account was intended to provide for both spouses during their retirement years. With respect to the account balance, the account was at its highest before 2011 at around $260,000. However, the Debtor depleted the account in an attempt to save the failing business. Defendant was unaware that Debtor had been withdrawing money from the retirement account. As of the date of the judgment of divorce, the account had a value of $20.88.

Debtor had an extramarital affair and left the marital home in late 2013. The parties agreed that Debtor would pay Defendant $30,000 as support from Debtor's retirement account. On May 22, 2014, Debtor took out the remaining $98,100 from his retirement account. Sometime in July of 2014, but before the filing of the divorce, Debtor gave Defendant around $30,000 in cash. The exact timing and amount of this transfer is unclear. However, the parties agree that the Debtor took back $2,500 of this money to pay his divorce attorney. Additionally, $5,600 was used to pay the balance of the credit card Debtor opened in Defendant's name without her knowledge.

---

[3] No evidence was presented as to Debtor's income in 2015. Debtor testified that he has been working for Sigma since November 2014.

[4] The parties use the terms "401," "IRA," and "retirement account" interchangeably. The only documentation related to Debtor's retirement account is a statement from Edward Jones for October 1- November 25, 2015, which provides "Custodian Edward Jones Trust Company for your Traditional IRA." (Trustee's Exh. 7). The Court will refer to this account as "retirement account."

4

Debtor testified:

> We paid some personal debt, which was basically brought on the household from my business, and the moneys that were left I left with her. She was not working, and I was not working, and I left. I believe it was around 50,000 that was left, but I could be off by 5,000, 10,000. Like I said earlier, this whole timeframe for me is very, very difficult.

(Trustee's Exhibit 13, Debtor Dep. 44). Debtor later clarified that of the $50,000, $20,000 was used to pay the Bank of America credit card, "I believe the Bank of America credit card was like 17,000, but that was from [M&A]. Probably -- probably around 20." (Debtor Dep. 48).

Debtor gave the Defendant this money because he depleted substantially all the retirement funds without her knowledge on a failed business and because his extramarital affair caused the breakdown of the marriage. Debtor testified, "I just stated that I felt obligated because I had spent at least that much in trying to keep the business [M&A] alive, and she deserved that. . . . She raised three beautiful children that are all graduates of Wayne State University." (Debtor Dep. 50).

Debtor gave Defendant the money in cash over a period of several weeks. (Debtor Dep. 48). Debtor testified that he would deposit the checks from Edward Jones into his individual Flagstar account, in which Defendant held no interest. (Debtor Dep. 47). Defendant was of the opinion that she received the money all at once. Defendant did not give anything to the Debtor when she received this money.

Defendant was specifically questioned whether she paid any consideration or anything of value to Debtor in exchange for the $30,000 transfer, Defendant answered "no." (ECF No. 74, Trial Transcript, 33). Furthermore, Trustee asked Defendant "Did you ever have any agreement verbally or in writing that the $30,000 transfer was going to be in lieu of spousal support in the divorce proceeding?", to which Defendant again answered "no." (Trial Tr. 33).

The Court finds that the parties agreed that Debtor would give Defendant some money as support since she was not working. The Court further concludes that the record does not evidence an agreement to waive spousal support in exchange for this money. With regard to the actual amount transferred, the Court finds that of the $50,000 originally in Defendant's possession--$20,000 was used to pay the Bank of America credit card, $5,600 was used to pay off the credit card Debtor opened in Defendant's name, and $2,500 was taken by Debtor to pay his divorce attorney--leaving $21,900.[5]

In April 2014, Debtor was forced to close his business as a result of a wrist injury that placed him out of work, leaving him to collect unemployment benefits from April 2014 through November 2014. Debtor returned to work in November 2014 as a truck driver working for Sigma a division of Sysco.

Debtor filed for divorce on July 10, 2014. The Wayne County Circuit Court entered a consent judgment of divorce on January 26, 2015, wherein the parties agreed Debtor would transfer his interest in the marital home in return for a waiver of spousal support. Debtor was represented by an attorney. Defendant did not have any legal representation.

The Court finds that Defendant did not know her legal rights at the time of the divorce, or now. Defendant, who has an eleventh grade education, did not understand the meaning of consideration and her responses at a glance appear inconsistent. However, after reviewing her full deposition and trial testimony and the entire record of this case, it is clear that Defendant did

---

[5] There is also testimony regarding a roof repair and the cost of a new car, evidence of which is attached to Defendant's Responses to Request for Admissions, Interrogatories, and Requests for Production of Documents (Trustee's Exh. 10). However this evidence is speculative as the Court does not know who owned the car or the actual date of the roof repair. The invoice is dated May 4, 2015, which is after the February 24, 2015 home appraisal. Had the home been appraised after the new roof was installed, Defendant could have a contribution claim for half of the cost of the installation/repair. Nevertheless, without a claim, how Defendant chooses to use this money is irrelevant for the determination of reasonably equivalent value.

6

give consideration (namely the waiver of spousal support) in exchange for the transfer of Debtor's interest in the marital home as reflected in the judgment of divorce.[6]

Under the judgment of divorce, both parties waived spousal support. Furthermore, the parties agreed this waiver would be non-modifiable. This paragraph states:

> Neither party will pay spousal support to the other party, and spousal support is forever barred. THE PARTIES FOREGO THEIR STATUTORY RIGHTS TO PETITION THE COURT FOR MODIFICATION OF SPOUSAL SUPPORT AND AGREE THESE SPOUSAL SUPPORT PROVISIONS ARE FINAL, BINDING AND NON-MODIFIABLE.

(Trustee's Exhibit 8, Judgment of Divorce, 3).

With regard to property and debt, the judgment of divorce provides,

Regarding the wife, she shall receive as her sole and separate property:

1. Her bank, financial, and insurance accounts, regardless of whether any of the aforesaid are retirement or non-retirement.
2. The Ford Fusion lease car. She must pay any liability regarding same. . . .
3. The property and home with its fixtures and contents located at 13328 Sycamore, Southgate, Michigan 48195. The wife will assume payment of any mortgage or liens on the property. . . .
4. Her personal property which includes, but is not limited to, her clothing, jewelry, and personal effects.

Regarding the husband, he shall receive as his sole and separate property:

1. His bank, financial, and insurance accounts, regardless of whether any of the aforesaid are retirement or non-retirement.
2. The Ford F150. He must pay any liability regarding the same. . . .
3. The Bayliner boat. He must pay any liability regarding the same. . . .
4. The camper/trailer. He must pay any liability regarding the same.
5. The business Moss Associates, Inc.
6. The property located at 1804 Miller Road, Dearborn, Michigan 48120. His wife shall sign a deed forthwith quit claiming her interest in the property to the husband.
7. His personal property which includes, but is not limited to, his clothing, jewelry, and personal effects.

---

[6] The consideration given between the parties with respect to their divorce proceedings is separate and different from whether such consideration is "value" or "reasonably equivalent value" under the Code or MUFTA.

Regarding both parties:

1. Except as noted herein, the husband shall pay the debt in his name alone.
2. Except as noted herein, the wife shall pay the debt in her name alone.
3. Except as noted herein, the parties do not have any joint debt with each other.
4. They shall equity [*sic*] divide the furniture, furnishings, appliances.

(Judgment of Divorce, 3-4).

Finally, with regard to retirement/pension benefits, the judgment of divorce states,

The husband shall retain the following free and clear of any claim of right, title or interest by the wife and the wife shall receive no interest in the following: the husband's retirement, social security, pension, profit sharing benefits, stock purchase rights and stock saving plans, 401k, IRA, or any kind of retirement or tax deferred savings plans he has through employment, the government, or any other entity of any kind, which may vest in the past, present or future.

The wife shall retain the following free and clear of any claim of right, title or interest by the husband and the husband shall receive no interest in the following: the wife's retirement, social security, pension, profit sharing benefits, stock purchase rights and stock saving plans, 401k, IRA, or any kind of retirement or tax deferred savings plans he has through employment, the government, or any other entity of any kind, which may vest in the past, present or future.

(Judgment of Divorce, 5).

On February 24, 2015, Debtor transferred his interest in the marital home (located at 13328 Sycamore, Southgate, MI 48195) via quitclaim deed to Defendant for $1.00. The marital home was appraised at $103,000 on February 24, 2015. The home was encumbered by a mortgage with a balance of $6,000 to $6,400.

Debtor filed his Chapter 7 petition on October 24, 2016. Most of Debtor's debt stemmed from his business. Debtor listed his liabilities in the amount of $178,469 in his bankruptcy schedules; the Court does not know the amount of Debtor's debt at the time of entry of the judgment of divorce. Defendant did not have any debt in her name other than her car note, mortgage obligation, and a credit card with a balance of $5,600.

8

This avoidance action followed.

## b. <u>Conclusions of Law</u>

Section 548(a)(1) provides, in pertinent part:

> The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> . . .
>
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> >
> > (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

11 U.S.C. § 548(a)(1)(B).

In turn, Mich. Comp. Laws Ann. § 566.35, provides:

> Sec. 5. (1) A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

M.C.L. § 566.35.

"The requirements for avoidance of a transfer as a constructive fraud on creditors are essentially the same under the Bankruptcy Code's avoidance provision and the Uniform Fraudulent Transfer Act, applicable under 11 U.S.C. § 544(b)." *Hagan v. Goldstein* (*In re Goldstein*), 428 B.R. 733, 735 (Bankr. W.D. Mich. 2010). "In particular, Section 548 avoids transfers by insolvent debtors if the debtor had received less than 'reasonably equivalent value' in return and Section 544(b) incorporates Michigan's version of the Uniform Fraudulent Transfer Act ("MUFTA") and its prohibition of transfers made for inadequate value whenever the debtor is insolvent." *Richardson v. Checker Acquisition Corp., (In re Checker Motors Corp.),* 495 B.R.

355, 357 (Bankr. W.D. Mich. 2013). The only contested element of Trustee's cause of action is whether Defendant gave reasonably equivalent value in exchange for the transfers.

Trustee makes three legal arguments in his trial brief. First, Trustee cites to *Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693 (6th Cir. 1999) to establish that he is not barred by issue or claim preclusion from challenging obligations contained in a divorce judgment. Next, Trustee asserts that in determining whether reasonably equivalent value was exchanged, the proper focus is on the net effect of the transfers on the debtor's estate, relying on *PositiveBankEast v. Shirley* (*In re Shirley*), No. 09-35259, 2011 WL 4054773 (Bankr. E.D. Tenn. Sept. 12, 2011).

Trustee lastly contends that "reasonably equivalent value" under § 548 "excludes future considerations, at least to the extent not actually performed," citing to 4 Collier on Bankruptcy para 548.07, at 548-66 (15th ed. 1982). Trustee additionally cites to *Sweet v. Chambers* (*In re Chambers*), No. 13-11127, 2015 WL 5728844 (E.D. Mich. Sept. 30, 2015) (value does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor); and *Kendall v. Carbaat* (*In re Carbaat*), 357 B.R. 553 (Bankr. N.D. Cal. 2006) (waiver of future spousal support was of no value from a creditor's perspective).

Defendant focuses on the state domestic relations law to determine the rights of the parties before analyzing "reasonably equivalent value" under the Code. Defendant cites both *Johnson v. Johnson*, 78 N.W.2d 216 (Mich. 1956) and *Sparks v. Sparks*, 485 N.W.2d 893 (Mich. 1992), which discuss the equitable factors used in the division of marital property. Defendant claims that under the circumstances--where the parties were married for nearly 28 years, Defendant worked primarily as a homemaker and was financially dependent on Debtor throughout the course of the marriage, Debtor's infidelity, and Defendant's limited education and

job skills--the transfer of the retirement funds and interest in the marital home in exchange for the waiver of spousal support constitutes a fair division of the marital property.

Defendant relies on *Onkyo U.S.A. Corp. v. Global Technovations, Inc.* (*In re Global Technovations, Inc.*) No. 10-12781, 2011 WL 1297356, at *5 (E.D. Mich. March 31, 2011), *aff'd sub nom. In re Global Technovations Inc.,* 634 F.3d 705 (6th Cir. 2012) to argue that courts consider many factors for determining reasonably equivalent value under the Code. These factors include the good faith of the parties, the disparity between the fair value of the property and what the debtor received, and whether the transaction was at arm's length. Based on these factors and the evidence presented, Defendant maintains that Debtor received reasonably equivalent value for both transfers.

i. Reasonably Equivalent Value Standard

The trustee has the burden to prove that the debtor received less than reasonably equivalent value in exchange for the transfer or obligation. *Meoli v. Cooper* (*In re Allen*)*,* 521 B.R. 613, 620 (Bankr. W.D. Mich. 2014). See also *Lisle v. John Wiley & Sons, Inc.* (*In re Wilkinson*), 196 Fed. Appx. 337, 341 (6th Cir. Aug. 17, 2006) ("A trustee seeking to avoid a transfer carries the burden of proving each statutory element by a preponderance of the evidence.").

The Bankruptcy Code does not define "reasonably equivalent value," but defines "value" for the purpose of determining whether a transfer is fraudulent as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor."[7] 11 U.S.C.

---

[7] Similarly, Section 566.33(1) of MUFTA provides

Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied. Value does not include an unperformed

§ 548(d)(2)(A); see also *In re Wilkinson*, 196 Fed. Appx. at 341. To determine reasonably equivalent value, the court first considers "whether the debtor received *any* value in the exchange." *Id.* If value was received, the court then determines whether the value received was reasonably equivalent to the value surrendered. *Id.*

> Determination of reasonably equivalent value is a question of fact,
>
> Analysis of the exchange for which reasonably equivalent value is alleged is conducted on the basis of the facts and circumstances of each case, rather than a fixed mathematical formula. . . . Value has been defined as that which provides an economic benefit, either direct or indirect, to the debtor. . . . The date for defining such reasonable equivalence is the date of transfer. . . ." . . . Further, "[s]ubsequent appreciation or depreciation should not, and does not, transform a transfer for reasonably equivalent value into a fraudulent transfer."

*Lisle v. John Wiley & Sons, Inc.* (*In re John Wiley & Sons, Inc.*)*, 319 B.R. 134, 138-140 (Bankr. E.D. Ky. 2004), *subsequently aff'd*, 196 Fed. Appx. 337 (6th Cir. 2006). See also *BankEast v. Shirley* (*In re Shirley*)*, No. 09-35259, 2011 WL 4054773, at *10 (Bankr. E.D. Tenn. Sept. 12, 2011),

> [R]easonably equivalent value is not an esoteric concept: a party receives reasonably equivalent value for what it gives up if it gets roughly the value it gave[,] and is not limited to money nor to value transferred pursuant to a valid contract. The Sixth Circuit has stated the following with respect to reasonably equivalent value:
>
>> The . . . focus has been placed upon the consideration received by the debtor, not the value given the transferee: [T]he proper focus is on the net effect of the transfers on the debtor's estate, the funds available to the unsecured creditors. As long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred.
>
> [I]t is clear that the debtor need not collect a dollar-for-dollar equivalent to receive reasonably equivalent value." In essence, [a] determination of reasonably

---

promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

M.C.L. § 566.33.

equivalent value is fundamentally one of common senses [*sic*], measured against market reality.

*Id.* (Internal quotations and citations omitted).

"In assessing this value, 'courts generally consider many factors, including the good faith of the parties, the disparity between the fair value of the property and what the debtor actually received, and whether the transaction was at arm's length.'" *In re Global Technovations, Inc.*, 2011 WL 1297356, at *5. It is critical for bankruptcy courts to "[e]xamine all aspects of the transaction and carefully measure the value of all benefits and burdens to the debtor, direct or indirect." *Id.* at *6.

The divorce setting makes the reasonably equivalent value analysis more difficult as many intangible or indirect benefits are involved in marital property distributions. *In re Fordu*, 201 F.3d 693; *In re Allen,* 521 B.R. at 620-621. Furthermore, *In re Allen* explains that "the legal relationship of the spouses to each other and to marital property changes significantly upon the filing of a divorce action." *Id.* at 621 (citing *Moyer v. Slotman* (*In re Slotman*), No. 12-80232, 2013 WL 7823003 (Bankr. W.D. Mich. Dec. 5, 2013)). This analysis is further complicated by the different policy objectives of divorce and avoidance proceedings.

When parties to a divorce proceeding enter into marital settlement agreements, the spouse with the greater earning capacity commonly assigns a disproportionate share of his or her interest in the marital property to the other spouse (and/or assumes a disproportionate share of joint liabilities), in return for the irrevocable waiver of spousal support. Sean A. O'Keefe, *Marital Settlement Transfers Under California's Uniform Voidable Transactions Act After in Re Carbaat and in Re Llamas*, 33 Cal. Bankr. J. 345 (2016) (criticizing the holding of *In re Carbaat* relied on by the Trustee). While this agreement may be equitable as to the separating spouses, existing or future creditors of one spouse may not share the same perspective and may seek to avoid these

13

transfers and liability assumptions as fraudulent under the Code. *Id.* (discussed in relation to California's version of the Uniform Voidable Transactions Act). Here, if the Trustee is successful, Defendant "could be left without the property that . . . she bargained for . . . and without the spousal support . . . that otherwise would have been awarded, but for the release of this claim." *Id.* at 345-46. Thus, an analysis of the law pertaining to spousal support and whether such constitutes "value" as defined under the Code and MUFTA is warranted.

As pointed out by Trustee, in *In re Fordu*, the Sixth Circuit recognized that divorce proceedings and fraudulent conveyance proceedings encompass different policy objectives and standards. The Court will apply the Bankruptcy Code in considering value exchanged between Defendant and Debtor, and whether the same was reasonably equivalent. As the parties' interests are created and defined by state law, the Court looks to Michigan law to determine their rights during the time of the pre-divorce-filing monetary transfer and the post-judgment of divorce transfer of marital property.

### ii. Whether Debtor Received Any "Value"

Trustee overlooks that the filing of a divorce gives rise to enforceable statutory rights for each spouse that do not exist outside of domestic relations law. See *In re Allen*. In *In re Slotman*, 2013 WL 7823003, the court summarized property rights during marriage, upon filing for divorce, and the vesting of marital property rights as follows:

> During a marriage, either spouse may own property individually and may use or dispose of that property without interference from the other spouse. *See Canjar v. Cole,* 770 N.W.2d 449, 453, 283 Mich. App. 723, 729–30 (2009). . . .
> . . .
>
> When a married couple divorces, property rights are somewhat altered. In a divorce action, the state court is required to divide all property that previously came "to either party by reason of the marriage." Mich. Comp. Laws. Ann. § 552.19; *see Reeves v. Reeves,* 575 N.W.2d 1, 2, 226 Mich. App. 490, 493 (1997). The "property that is subject to apportionment is referred to as 'marital property,'

and it is this property that comprises the marital estate." *Byington v. Byington,* 568 N.W.2d 141, 144, 224 Mich. App. 103, 110 (1997). Assets acquired or income earned by one spouse during the marriage are generally considered to be marital property. *Byington,* 568 N.W.2d at 144; 224 Mich. App. at 110. Separate property, which may include assets acquired or earned before the marriage, inheritances received by one spouse and kept separate from other assets, and personal injury recoveries for pain and suffering, is not subject to apportionment, except in certain statutorily-defined circumstances.[7] *Cunningham v. Cunningham,* 795 N.W.2d 826, 830, 289 Mich.App.195, 201 (2010). "The mere fact that property may be held jointly or individually is not necessarily dispositive of whether the property is classified as separate or marital." *Cunningham,* 795 N.W.2d at 830, 289 Mich. App. at 201–02 (citations omitted).

*In re Slotman,* 2013 WL 7823003, at *6–7 (footnotes omitted).

Significantly, "each spouse's interest in marital property vests upon the filing of the divorce action." *Id.* at *7. In *In re Allen* the court found that "[a]lthough a spouse may not have had a claim to marital or separate property before filing for divorce, Michigan law gives each spouse a statutory (and perhaps equitable) claim, albeit unliquidated, against the property of the other, 'to be paid by either party in money.'" *In re Allen,* 521 B.R. at 621 (quoting M.C.L. § 552.19). Furthermore, "[t]his right to payment, which arises upon the commencement of the divorce proceeding, certainly falls within the broad definition of 'claim' or 'debt' within the meaning of § 548 or the UFTA[.]" *Id.*

Neither party cited to any binding authority for the treatment of spousal support in determining reasonably equivalent value under § 548(a)(1)(B) or M.C.L. § 566.35. The right to spousal support also arises upon the commencement of divorce proceedings. M.C.L. §§ 552.13 and 552.23.

Trustee's reliance on *In re Chambers* and *In re Carbaat* is misplaced. *In re Chambers* is factually distinguishable from the case at bar. There, the challenged transfer was between a debtor and his *current* spouse. *In re Chambers,* 2015 WL 5728844 at *1. At the time of the transfers, the debtor was indebted to numerous creditors, including his ex-wife. *Id.* The debtor

sought to modify or terminate spousal support to his ex-wife claiming he could no longer afford to pay it because he had retired. *Id*. at *2. After an evidentiary hearing on the debtor's finances, evidence revealed, among other things, the debtor gifted four promissory notes at issue in his bankruptcy action to his current wife. *Id*. The trustee sought to avoid the transfers; however, only one note was within the two years' filing date of the debtor's bankruptcy petition. The court found that the current wife did not hold any interest in the note and there was no evidence that the transfer of the note was made for anything other than "love and companionship," which was of no value to the estate. *Id*. at *4-5.

The facts of this case are markedly different from *Chambers*. First, these transfers were either in contemplation of divorce or pursuant to the judgment of divorce. Also, in the instant case Defendant waived her right to spousal support--a legally enforceable obligation--which is not based on love and companionship.

In *In re Carbaat*, the court concluded that a waiver of future spousal support was of no value from a creditor's perspective. *In re Carbaat*, 357 B.R. at 561. In so concluding, the court relied on § 548(d)(2)(A)'s definition of "value" which expressly excludes "an unperformed promise to provide future support to the debtor or to another person." *Id*. The court further noted that "[t]he rationale behind the statutory exclusion is that an unperformed promise to provide future support to the debtor does not benefit the creditors in a liquidation." *Id*. This was the extent of *Carbaat's* discussion on this issue.

The Court disagrees with the *Carbaat* court's interpretation of the statutory exclusion of § 548(d)(2)(A) as applied to spousal support. Spousal support is not a "promise." A "promise" is defined in Merriam-Webster dictionary as "a : a declaration that one will do or refrain from doing something specified[;] b : a legally binding declaration that gives the person to whom it is

16

made a right to expect or to claim the performance or forbearance of a specified act." Merriam-Webster.com/dictionary/promise. Black's Law Dictionary defines "promise" as "[t]he manifestation of an intention to act or refrain from acting in a specified manner, conveyed in such a way that another is justified in understanding that a commitment has been made; a person's assurance that the person will or will not do something. Black's Law Dictionary (10th ed. 2014). Thus, a promise is a voluntary undertaking that may result in certain legal rights.

Unlike a promise, spousal support is a legal right or obligation mandated and enforced by statute. Once a legal right to spousal support arises and is ordered by the court, the obligation to pay the same is not voluntary. Furthermore, in Michigan, all judgments of divorce must include a provision for spousal support. M.C.R. 3.211(B)(4). "[A] judgment silent with regard to spousal support reserves it." *Id*. A support order is a final order or judgment. M.C.L. § 552.603(2). As such, it is enforceable by garnishment, execution and other remedies for the collection of judgments, M.C.L. § 600.4012, as well as other civil remedies and criminal sanctions outlined in M.C.L. § 552.601 et seq.[8] Accordingly, unless spousal support is waived, the obligation to pay is mandated by law and is not a voluntary declaration of one spouse to the other.

Spousal support is not an "unperformed promise." The obligation to pay spousal support is based on considerations that transpired during the marriage and is quantifiable. Plainly, the statutory exclusion language of § 548(d)(2)(A) does not encompass spousal support obligations. Cases illustrating "future unperformed promise" include *In re Chambers* (discussed earlier) and *Zubrod v. Kelsey* (*In re Kelsey*)*, 270 B.R. 776, 781 (B.A.P. 10th Cir. 2001) (analyzing a transfer

---

[8] Court ordered spousal support is enforceable pursuant to The Support and Parenting Time Enforcement Act, M.C.L. § 552.601 et seq. The Act has provisions for enforcement of support orders including, adding a surcharge to past due support payments, income withholding, imposition of liens on personal and real property, suspension of driver's or occupational licenses, contempt proceedings, and the issuance of bench warrants.

between current spouses--"care and comfort one receives from a marital relationship does not qualify" as value, which is limited to economic or monetary consideration). Compare payment for actual support rendered. *Slone v. Brennan* (*In re Fisher*), 362 B.R. 871, 891 (S.D. Ohio 2007), *aff'd,* 296 Fed. Appx. 494 (6th Cir. 2008) (cash transfers from debtor to his domestic partner "are no more than daily maintenance of a household" and not unperformed promises).

Thus, spousal support is a legally recognized debt as defined by the Code. "Debt" is defined as "liability on a claim." 11 U.S.C. § 101(12). "Claim" in turn is defined as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured[.]" 11 U.S.C. § 101(5)(A). Finally, "debt" is encompassed in the Code's definition of value, "property, or satisfaction or securing of a present or antecedent debt of the debtor, …." 11 U.S.C. § 548(d)(2)(A).[9]

Additionally, Trustee should not be permitted to recover the value of spousal support payments for the bankruptcy estate. "A judgment against the defendant would be meaningless

---

[9] Although the analysis is similar, Trustee fails to specifically address the requisite analysis under MUFTA or provide any cases addressing the treatment of spousal support as applied to MUFTA. In his complaint, Trustee exclusively relies on MUFTA, M.C.L. § 566.35, to avoid the monetary transfer.

The following are the requisite definitions under MUFTA:

> (c) "Claim", except as used in "claim for relief", means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.
> …
> (e) "Debt" means liability on a claim.

M.C.L. § 566.31 (c) and (e). M.C.L. § 566.33 provides,

> Sec. 3. (1) Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied. Value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

M.C.L. § 566.33.

because she would have a corresponding nondischargeable claim against the estate which would have to be paid in full[.]" *Whaley v. Whaley* (*In re Whaley*)*,* 190 B.R. 818, 822 (Bankr. N.D. Miss. 1995).

For these reasons, the Court finds that "[i]f, at the time of transfer, [one spouse] owed a presently enforceable legal obligation of support to [the other spouse under state law, the] release of that obligation . . . in exchange for the transfer of [the other spouse's half-interest in the marital home] would--to that extent--constitute satisfaction of a 'present or antecedent debt.'" *Gray v. Snyder*, 704 F.2d 709, 712 (4th Cir. 1983) (value found applying North Carolina law to a settlement agreement not reduced to a judgment); see also *In re Whaley*, 190 B.R. at 822 (court ordered alimony and support obligations cannot be avoided as fraudulent transfer); *Matter of Ottaviano*, 63 B.R. 338, 342 (Bankr. D. Conn. 1986) ("debtor's release from the payment of future periodic alimony constitutes reasonably equivalent value"); *Brick v. Conti* (*In re Conti*), 572 B.R. 73, 79 (Bankr. W.D.N.Y. 2017) ("satisfaction of a legal and ethical obligation to care for his family" was "fair consideration" under New York fraudulent transfer law and "reasonably equivalent value" under the Bankruptcy Code).

The waiver of spousal support is a direct benefit to a debtor. In exchange, a debtor is discharged from a spousal support obligation. "Courts have held that a reduction in debt is sufficient to establish equivalent value." *In re Wilkinson,* 196 Fed. Appx. at 343 (internal citations omitted). To determine the existence of a spousal support obligation, the Court looks to Michigan law.

*1. Application to Pre-Divorce Monetary Transfer under MUFTA*

After reviewing the evidence the Court finds that Debtor received no value in exchange for the $21,900 monetary transfer. Defendant did not waive her right to spousal support in

exchange for this money. Assuming for the sake of argument that Defendant did waive spousal support in exchange for this transfer, the Court finds that prior to the commencement of the divorce proceedings, Defendant did not have a statutory right to spousal support pursuant to either M.C.L. § 552.13 or § 552.23. It is undisputed that Debtor transferred the money to Defendant prior to the filing of the divorce.

Until the complaint of divorce was filed, Debtor had no presently enforceable legal obligation of support owed to Defendant. Without an enforceable statutory right to spousal support, Defendant's waiver of such was more akin to a future promise and not a waiver of a legal claim. A future unperformed promise is specifically excluded from the definition of "value" under MUFTA.

While Defendant argues that the $30,000 came from Debtor's retirement account, to which she held a one-half interest,[10] the timing of this transfer is key--as there was no marital estate. Defendant was only a named beneficiary under the Debtor's retirement plan.[11] Thus, she held a contingent interest of a beneficiary and not the one-half-interest that she presumably would have been entitled to under M.C.L. § 552.18, upon the filing of the divorce.

Accordingly, the Court finds that the Debtor did not receive value in exchange for the monetary transfer. As to the amount actually transferred, the Court concludes that the amount transferred to the Defendant was $21,900.

---

[10] Once the marital estate was created, Defendant could have made a claim for her marital interest in the retirement account. M.C.L. § 552.18. However, this is irrelevant to the Court's analysis of "value" under the Code or MUFTA, where value is measured at the time of the transfer.

[11] The parties have not provided a copy of Debtor's retirement plan, which would dictate the named beneficiary's interests and any rights in the retirement account. Furthermore, no information was provided to the Court regarding whether Debtor's benefits had vested.

## 2. Application to Post-Judgment Transfer of Debtor's
### Interest in Marital Home under § 548

The Court finds that a claim of spousal support arose under M.C.L. §§ 552.13 and 552.23 in favor of Defendant upon the commencement of the divorce proceeding. But for Defendant's waiver of spousal support in exchange for the transfer of Debtor's interest in the marital home, spousal support would have been a debt owed by Debtor. Defendant had a legal right to payment under M.C.L. § 552.13 and § 552.23 for this debt. This spousal support is value to the bankruptcy estate as it would be reduced to a monetary stream of payments Debtor would be legally obligated to pay.

The consideration exchanged by the parties was the waiver of spousal support for the marital home. The judgment of divorce provides that both spouses waive spousal support, it is forever barred and nonmodifiable. However, given the respective financial positions of the parties and their earning capabilities, it is highly unlikely that Defendant would have been obligated or ordered to pay spousal support to Debtor. This mutual waiver of spousal support is illusory as Debtor did not have a claim to spousal support to waive in the first place.

"Michigan's statute governing spousal support favors a case-by-case approach to determining spousal support." *Loutts v. Loutts*, 826 N.W.2d 152, 158 (Mich. Ct. App. 2012). M.C.L. § 552.23(1) provides,

> Sec. 23. (1) Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party, the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

M.C.L. § 552.23. There is no strict formula, "[i]ndeed, 'given the statutory mandate of M.C.L. 552.23 . . . there is no room for the application of any rigid and arbitrary formulas when determining the appropriate amount of spousal support. . . .'" *Loutts,* 826 N.W.2d at 158 (internal citations omitted). "The primary purpose of spousal support is to balance the parties' incomes and needs so that neither party will be impoverished, and spousal support must be based on what is just and reasonable considering the circumstances of the case." *Id.* at 159. See also *Cassidy v. Cassidy*, 899 N.W.2d 65, 75, (Mich. Ct. App. 2017) *appeal denied*, 902 N.W.2d 623 (Mich. 2017).

"In deciding whether to award spousal support, the trial court should consider several factors, including

> '(1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity.'

*Loutts,* 826 N.W.2d at 31-32.

The length of the marriage and disparity in earning capacity are critical factors. See *Magee v. Magee*, 553 N.W.2d 363 (Mich. Ct. App. 1996) (after a nearly 30 year marriage, alimony award of $400 a month for two years and $250 a month thereafter to wife was inequitable where wife was 58 years old and unemployed at the time of divorce, husband was earning approximately $45,000 a year, despite the fact that wife was awarded mobile home valued between $14,000 and $15,000); *Demman v. Demman*, 489 N.W.2d 161, 163 (Mich. Ct. App. 1992) (after a 23 year marriage which ended as a result of husband's infidelity, wife--who

was 47 years old at the time of divorce and in precarious health--was awarded 74 percent of the marital estate and spousal support, without which she would not be able to maintain her standard of living); *McNamara v. McNamara*, 443 N.W.2d 511, 515-16 (Mich. Ct. App. 1989), *judgment modified, appeal denied in part*, 460 N.W.2d 222 (Mich. 1990) (after a 24 year marriage, wife should have been awarded "$1,200 per month as permanent alimony for the duration of her life or until she remarries" where she "contributed significantly to the [husband's] success by not pursuing her own career opportunities and by providing the comfort and support, financial and otherwise, needed for [husband's] well-being while he was climbing a professional and financial ladder" and husband after reaching success neglected his family and left it in dire financial straits); *Zecchin v. Zecchin*, 386 N.W.2d 652, 656 (Mich. 1986) (an alimony award of $150 per month for two year rehabilitation period was too low after a 27 year marriage where wife's role was primarily of mother and homemaker).

Under Michigan law, Defendant would have been entitled to the payment of some spousal support. This was a long-term marriage, Debtor was the primary breadwinner, Defendant raised the children and occasionally worked minimum wage jobs, Debtor had the ability to pay spousal support, and Debtor caused the breakdown of the marriage.

### iii. If Value was Received, Whether the Value Received was Reasonably Equivalent to the Value Surrendered

Having concluded that a legal claim to spousal support is value for Debtor and the estate, and that Defendant was entitled to spousal support under Michigan law, the Court turns to whether the value of the spousal support was less than reasonably equivalent value in exchange for the transfer of Debtor's interest in the marital home. The question of equivalent value is one of fact. However, neither party provided the Court with the requisite analysis regarding the amount of spousal support Defendant would have been entitled to had she not waived it.

23

Unfortunately, Trustee ends his analysis at his legal position that spousal support is of no value for the estate and fails to argue in the alternative. Trustee has the burden to prove the value of the spousal support Defendant waived was not "reasonably equivalent" to the value of Debtor's interest in the marital home. *In re Wilkinson,* 196 Fed. Appx. at 341. While Trustee spent considerable time addressing the debt assumed by Debtor, Trustee has not offered any evidence as to the value of the spousal support and the Court will not speculate.

Without valuing the spousal support, the analysis is incomplete as the Court is unable to make the required comparison of the value received to the value surrendered.[12] As to the remaining *In re Global Technovations, Inc.* factors, the Court notes that there is no evidence or arguments presented of fraud or collusion by the parties. There is also no argument with regard to whether the transaction was made in good faith and at arm's length.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that there was no value given in exchange for the pre-divorce monetary transfer. Defendant did not waive her right to spousal support in exchange for the $21,900 monetary transfer. Even if Defendant had given such a waiver, no right to spousal support existed prior to the commencement of the divorce proceedings. Therefore, there was no legal obligation of support that would amount to a "debt" or "claim" under the Code or MUFTA. Consequently, Trustee may avoid the monetary transfer in the

---

[12] The Court still does not know the actual amount of debt as of the date of the judgment of divorce. There are other assets exchanged in the judgment of divorce; these are nominal in value in comparison to the marital home and spousal support. Moreover, the parties mainly focus on the spousal support and the marital home in analyzing the transfers. As to the value of Debtor's interest in the marital home, Trustee ignores that the Court has to factor in the mortgage on the marital home to determine the former spouses' equitable share of the home's equity. *In re Neal,* 541 Fed. Appx. 609, 612 (6th Cir. 2013). Furthermore, if Defendant was ordered to return Debtor's half interest in the marital home, and she could only do so by selling the property, the Court would consider the cost of the sale when determining the value of the property. *Slone v. Dirks* (*In re Dirks*), No. 08-8031, 2009 WL 103606, at *7, 404 B.R. 442 (table) (Ohio 6th Cir. B.A.P. Jan. 16, 2009); *Silagy v. Morris,* No. 5:13-CV-2645, 2015 WL 853499, at *11-12 (N.D. Ohio Feb. 26, 2015).

amount of $21,900 under M.C.L. § 566.35(1), subject to § 544.  The Trustee did not plead § 544 in his complaint; further, the parties did not present any argument or stipulation regarding the elements of § 544.  While the proofs will not be reopened, the Court will entertain supplemental briefing on this critical issue.

With regard to the transfer of Debtor's interest in the marital home pursuant to the judgment of divorce, the Court finds that Defendant's waiver of her right to spousal support constitutes "value" as defined in § 548(d)(2)(A).  The Court additionally finds that Trustee failed to meet his burden to show the value of the spousal support was less than a reasonably equivalent value in exchange for Debtor's one-half interest of the marital home.  Accordingly, this transfer may not be avoided under § 548.

**Signed on May 09, 2018**



/s/ Maria L. Oxholm

**Maria L. Oxholm**
**United States Bankruptcy Judge**